# United States Court of Appeals
## For the First Circuit

_____

No. 00-1963


DOUGLAS A. KINAN,

Plaintiff, Appellant,

v.

WILLIAM S. COHEN, SECRETARY OF DEFENSE, ET AL.,

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

_____

Before

Boudin, Chief Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

_____


Sarah L. Levitt for appellant.
Barbara Healy Smith, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellees.

_____

October 18, 2001

_____

**LYNCH, <u>Circuit Judge</u>**.  This is another case in which a plaintiff has sued his employer, counsel appear to have resolved the matter, and plaintiff denies there is a settlement.  <u>Cf.</u> <u>Quint</u> v. <u>A.E. Staley Mfg. Co</u>, 246 F.3d 11 (1st Cir. 2001).  Douglas Kinan appeals from district court orders dismissing the action, refusing to reopen, and  enforcing a purported settlement agreement with his former federal employer, the Defense Logistics Agency.  The district court dismissed Kinan's Title VII retaliation claim and tort claims against the defendants after the defendants notified the court that the parties had reached an agreement.  Kinan, proceeding pro se after parting company with his attorney, timely sought to have his case reopened, arguing that he did not authorize his attorney to agree to defendants' proffered agreement, which he said lacked key provisions.  The defendants, in turn, moved to enforce the settlement.  The district court, without an evidentiary hearing, granted the defendants' motion in part, finding that there was, indeed, an enforceable settlement agreement, and that the only remaining dispute was over other terms of that  agreement.

## I.

We summarize those facts in the record which are uncontested, except where noted; the district court did not make any findings of fact.

Kinan was an Equal Employment Specialist within the Equal

Employment Office of the Defense Logistics Agency, a component of the U.S. Department of Defense, and worked on claims of discrimination against the Agency. In 1998, Kinan filed an internal complaint alleging that the Agency had taken adverse employment actions against Kinan in retaliation for Kinan's advocacy on behalf of certain employees who felt that they were victims of discrimination. After the Agency rejected Kinan's claim, Kinan brought suit in district court. While that action was pending, in 1999 Kinan filed suit against one of his supervisors charging harassment.[1]

Kinan and his attorney, Scott Lathrop, began meeting with the defendants in late December 1999, to discuss a possible settlement. Negotiations went well enough that on January 10, 2000, the parties agreed to a joint request to extend the deadline for defendants' response to Kinan's amended complaint. The material terms of the contemplated agreement, according to the defendants, provided that: 1) the Agency would eliminate from Kinan's personnel file all evidence of Kinan's removal from service; 2) the defendants would pay $32,500 in satisfaction of all of Kinan's claims; 3) Kinan would sign a resignation letter; and 4) Kinan would withdraw with prejudice all pending actions against the defendants, including his actions in

---

[1] After the government substituted the United States for the individual supervisor, the district court consolidated Kinan's actions against the Agency and the United States. We refer to those parties collectively as "defendants."

district court and his administrative actions pending before the Merit Systems Protection Board.

Lathrop reviewed the proposed agreement with Kinan. Kinan sought to include a provision preserving his pending Federal Employment Compensation Act ("FECA") claims, and also emphasized the need to change his status from "terminated" to "resigned" in time to allow him to meet application deadlines for other government jobs. The parties continued to negotiate the terms over the following weeks. After a lengthy meeting involving all parties on February 11, the parties appeared to be close to reaching an agreement. Kinan reiterated his demand for a provision requiring the Agency to withdraw its controversion of Kinan's FECA claim. Jerome Brennan, one of the defendants' attorneys, advised Kinan that he was without authority to agree to that term, but that he would seek to have it incorporated into the agreement. According to Brennan, Kinan "gave his word" that he would sign the agreement if it contained that provision. The defendants were aware that Kinan wished to do a "final read" of the settlement agreement before signing it.

Later that day, Lathrop forwarded to Brennan additional changes Kinan wanted to make to the proposed FECA claim language. Three days later, on February 14, Kinan sent more revisions to Lathrop, which Lathrop again forwarded to Brennan. Lathrop then sent what he referred to as Kinan's "final changes" by e-mail to Brennan so that

Brennan could incorporate them into the February 11 draft agreement.

Also on February 14, the date on which the defendants' response to Kinan's complaint was due, the defendants notified the court that the parties had reached an agreement in principle and that the defendants anticipated that the parties would file a joint statement of dismissal shortly. The defendants' attorneys assert that Lathrop agreed with that action; there is nothing in the record from Lathrop on this point.

The district court entered an order on February 15 that Kinan's case was "dismissed . . . without prejudice to the right of any party, upon good cause shown, to reopen the action within thirty (30) days if settlement is not consummated."[2] No joint stipulation of dismissal was ever filed, and Kinan now claims he never authorized his attorney to join the defendants' report of settlement.

Kinan asserts that he did not consider the matter settled. On February 16, Kinan again contacted Lathrop by e-mail in which he raised several concerns regarding the agreement, and objected that the changes to the FECA provisions which (Kinan felt) defendants had promised in the February 11 meeting had not been made. Lathrop forwarded Kinan's comments to Brennan, prefaced by a message which stated, "[Kinan] has . . . a few more changes." Brennan responded to

_____

[2]     The court issued a similar order on February 18 conditionally dismissing Kinan's Title VII claim, which the court later consolidated with Kinan's tort claim.

-6-

Lathrop by letter on February 17, stating that the Agency considered the "final changes" that Lathrop had sent to the defendants on February 14 to be an offer, which the defendants accepted by incorporating those changes into the agreement, signing it, and forwarding the agreement to Lathrop and Kinan for their signatures. Thus, as of February 17, there appeared to be an agreement, the Agency having agreed to the "final changes" Kinan requested.

In response, Kinan insisted that he did not consider anything final until he was satisfied with the language of the agreement, and Lathrop sent a message to Brennan, stating that "[Kinan] will not sign anything until he is certain that he is comfortable with it. And until then there is no 'deal.'" Lathrop sent a copy of that message to Kinan, advising Kinan that "you should be satisfied that you are comfortable with the language before you consider signing anything. You should not feel pressured into signing any settlement agreement."

On February 25, 2000, well within the thirty day period set by the district court in its February 15 order, Kinan, through Lathrop, filed a motion to reopen on the ground that a settlement "has not been consummated."[3] Shortly thereafter, Lathrop withdrew as Kinan's attorney. In the reply to Kinan's motion to reopen, the defendants stated that the parties had reached an agreement and requested a status

---

[3] Also on February 25, Lathrop notified the Merit Systems Protection Board, before which Kinan's administrative actions were pending, that Kinan's claims were not settled.

conference. Kinan, proceeding pro se, filed a second motion to reopen, denying that settlement had been reached and claiming: "The agency is now attempting . . . to force me to accept an agreement that, in no way, resembles what was communicated to both my attorney and the agency attorney."

At the status conference on April 26, 2000, Kinan (still proceeding pro se) told the court that "there was no settlement agreement" and that his attorney had so notified the court on February 25. The court admonished Kinan that there are "consequences" when a party notifies the court that it does not have to go forward with trial, and stated: "Insofar as I'm concerned this initial case is over. Except that you have every right to make sure that the settlement is enforced." Kinan protested that the parties "never came to an agreement on all of the terms and conditions" and that the defendants failed to comply with Kinan's demand that the Agency change his status to show that he had resigned rather than been terminated in time for Kinan to apply for other government jobs, which Kinan argued was a key condition of settlement.

The defendants argued that they considered the February 17 settlement agreement to be binding, and stated that they stood ready to honor that agreement. The court advised the defendants to file a motion to enforce the settlement agreement, and told Kinan that Kinan could file an opposition to the defendant's motion, along with anything

else Kinan wished to file.  On May 2, 2000, the defendants filed a motion to enforce the settlement agreement and dismiss Kinan's case. Accompanying the motion were affidavits by defendants' attorneys giving their version of the events surrounding the purported settlement agreement.

In his opposition to the defendants' motion to enforce the agreement, Kinan claimed that Lathrop did not have authority to unilaterally settle Kinan's case; that Kinan's acceptance of the February 11 agreement was contingent on his right to have a "final read" of the agreement to ensure that his changes were incorporated; and that material terms remained unresolved at the conclusion of the February 11 meeting.  Kinan also argued that defendants had delayed and caused him to miss the opportunity to apply for other government jobs because his status was not changed from "terminated" to "resigned." Kinan's filing did not include affidavits, either his own or Lathrop's, but did include copies of e-mail messages between Kinan, his attorney, and the defendants during the relevant period in support of his arguments.  Kinan urged the court to order Lathrop and defendants' attorneys to "appear to be examined under oath with respect to the set of facts . . . regarding settlement discussions."

The district court's ruling on the defendants' motion to enforce the settlement agreement stated in full:

Motion allowed in part and denied in part.  It is

undisputed that the parties reached a settlement and reported that settlement to the Court. They are judicially estopped to claim otherwise. The case is <u>not</u> reopened to examine the underlying contentions.

Further, while it is undisputed that the government is bound to pay Kinan $35,000.00,[4] other terms of the settlement agreement are in dispute. This contractual dispute with the government is beyond the subject matter jurisdiction of this Court. Under the Tucker Act, jurisdiction lies in the Court of Federal Claims. The present dispute between the parties is dismissed for want of jurisdiction.

The court also entered an order mooting the parties' remaining motions, including Kinan's motion to reopen. Kinan filed a motion for reconsideration of the district court's order, which was denied. The court entered judgment of dismissal on July 28, 2000, stating that the cases "will not be reopened to examine the underlying contentions concerning settlement."

## II.

Because Kinan's claims are based on federal law -- retaliation under Title VII and tort claims against the United States -- federal law governs Kinan's appeal from the district court's enforcement order. <u>Malave</u> v. <u>Carney Hosp.</u>, 170 F.3d 217, 220 (1st Cir. 1999). The determination of whether there is an enforceable agreement is a "mixed question[] of fact and law," to which this court applies "a

---

[4] As the defendants point out, this appears to be a typographical error; all versions of the draft settlement agreement, as well as e-mail messages, call for the defendants to pay Kinan $32,500.

-10-

sliding scale standard of review under the label of clear error review." <u>Quint</u> v. <u>A.E. Staley Mfg. Co.</u>, 246 F.3d 11, 14 (1st Cir. 2001).  In this context, the district court's factual conclusions engender review for clear error, while its rulings of law receive more independent review.  <u>Id.</u>

## The Conditional Dismissal Order

In entering the conditional dismissal order, the district court was entitled to rely on the representations of counsel that an agreement in principle had been reached.  Kinan's attorney was cloaked with apparent authority to agree that defense counsel could so report to the court.  <u>See</u> <u>Interstate Commerce Comm'n</u> v. <u>Holmes Transp., Inc.</u>, 983 F.2d 1122, 1129 (1st Cir. 1993).

## Denial of Motion to Reopen

The district court denied the motion to reopen by referring to the doctrine of judicial estoppel.  That doctrine is problematic,[5]

---

[5]     Judicial estoppel protects the integrity of the courts by preventing a litigant who has obtained a benefit in one forum from invoking the authority of another court to escape the burdens of that bargain.  <u>See</u> <u>United States</u> v. <u>Levasseur</u>, 846 F.2d 786, 792-93 (1st Cir. 1988).  But where parties report that they are near settlement, which is intended to benefit both the parties and the court, "[o]ne party should not be judicially estopped when it turns out that such a joint representation was incorrect." <u>Wang Labs.</u> v. <u>Applied Computer Sci., Inc.</u>, 958 F.2d 355, 359 (Fed. Cir. 1992) (applying First Circuit

and the defendants do not defend its use.  The abuse of discretion standard is the standard by which we review decisions on motions to reopen.  <u>Dankese</u> v. <u>Defense Logistics Agency</u>, 693 F.2d 13, 15 (1st Cir. 1982).

Kinan denies he had <u>authorized</u> his attorney to settle.  In general, an attorney, without requisite authority, may not settle claims on his client's behalf merely by virtue of his employment.  <u>See</u> <u>Malave</u>, 170 F.3d at 221; <u>Michaud</u> v. <u>Michaud</u>, 932 F.2d 77, 81 (1st Cir. 1991).  Conversely, "an attorney may make a binding compromise on behalf of his client if the client has authorized him to do so." <u>Michaud</u>, 932 F.3d at 80 (citing <u>Garabedian</u> v. <u>Allstates Eng'g Co.</u>, 811 F.2d 802, 803 (3d Cir. 1987)).  Where there is a material dispute about the giving of authority, an evidentiary hearing is generally required. <u>Id.</u> at 81.  In <u>Michaud</u>, plaintiff's attorney advised the court that the plaintiff had agreed to settle his case, and the district court entered an order exactly like the one entered in this case, except that the parties had sixty days to move to reopen.  The plaintiff sent a letter to the court within the sixty-day period in which he expressed dissatisfaction with the settlement and requested reopening, and later claimed that he had never authorized his attorney to settle. This Court held that it was error for the district court to confirm the settlement

---

law).  Invoking estoppel in this type of case might work against the salutary policy encouraging settlement.  <u>Cf.</u> <u>Pratt</u> v. <u>Philbrook</u>, 109 F.3d 18, 21 n.4 (1st Cir. 1997).

without giving the plaintiff a fair opportunity to have his say in an evidentiary hearing.  Id. at 81.

Here the court did give Kinan an opportunity to be heard at the pretrial conference.  Kinan made objections that there were material terms still unagreed on, but the objections were either ephemeral or unsupported.  The major issue in contention concerned FECA provisions.  The earlier issue as to other jobs Kinan wished to apply for had, as his counsel conceded at oral argument, become moot.  On February 14, the language Kinan wanted on FECA and a few other points was sent to defendants' counsel and these were characterized by Kinan's counsel as "final changes."  On February 17, the defendants accepted Kinan's language, incorporated it into the agreement, executed it and sent it to Kinan.

Kinan's objections made to the district court amounted to an assertion he had to approve the precise language of the agreement, though the material terms were resolved.  But we have rejected the argument that "there can be no agreement until a document is executed." Quint, 246 F.3d at 15.  Kinan's reasons also do not constitute good cause to reopen the litigation.[6]

---

[6]    A conditional dismissal order is not an appealable final judgment, but rather, a mechanism whereby the court allows parties on the brink of settlement to avoid needless litigation but retains jurisdiction to reinstate the action or enforce the agreement, where appropriate. See Pratt, 109 F.3d at 21 n.5. Because it is not a final judgment, the strictures of Rule 60(b) do not apply.  It appears that the good cause requirement in this context is less stringent than the

-13-

Enforcement of the Settlement Agreement

The district court's description of its enforcement order again is correct in essence. The agreement consisted of more than the government paying a sum, and in fact the other material terms were fixed.

As we have just held, there were no material terms in dispute as of the February 17 document.[7] Were there material terms in dispute, the outcome of the motion to reopen most likely would have been different. The district court enforcement order, which we read and interpret as enforcing the February 17 document, is affirmed.

This means that we reject the government's argument, unfortunately made to us, that while Kinan is bound by his agreement to dismiss the action, the government is not bound by its undertakings in the agreement. The government is bound and must pay the sum it agreed to and honor the other terms.

We hope this ends the matter. But if one side or the other

showing required in the Rule 60(b) context. Cf. id. at 21-22.

[7] Because there was no dispute over the material terms, we do not reach whether the district court was correct in holding it had no jurisdiction over any disputes over terms and that jurisdiction was in the Court of Claims under the Tucker Act. There is contrary authority, to the effect that there is jurisdiction in the district courts, where what is at issue are the terms of a Title VII case settlement. See Lee v. United States, 33 Fed. Cl. 374, 379-80 (1995); Fausto v. United States, 16 Cl. Ct. 750, 753 (1989).

fails to live up to the agreement, the aggrieved side may sue for breach of contract.  <u>Kokkonen</u> v. <u>Guardian Life Ins. Co.</u>, 511 U.S. 375, 381-82 (1994).

On the terms described, the district court's orders are affirmed.

<u>So ordered.</u>