**Ana RIVERA OLMO, Plaintiff,**

v.

**STATE INSURANCE FUND OF THE COMMONWEALTH OF PUERTO RICO, Defendant.**

**Civil No. 99–2350 (JAG).**

United States District Court,
D. Puerto Rico.

April 29, 2002.

Dennis A. Simonpietri–Monefeld, Guaynabo, PR, for plaintiff.

James W. McCartney, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is defendant State Insurance Fund of the Commonwealth of Puerto Rico's ("SIF") motion to enforce the settlement agreement it allegedly reached with plaintiff Ana Rivera Olmo ("Rivera"). (Docket Nos. 52, 55.) Rivera contends that she did not authorize her attorney to settle the case on her behalf. On February 12, 2002, the Court held an evidentiary hearing on the matter and heard from Rivera and from her former counsel. (Docket No. 58.) After careful consideration of the evidence proffered by the parties, the Court grants SIF's motion, enforces the settlement agreement, and will enter judgment accordingly.

## FACTUAL BACKGROUND

The facts underlying this dispute are straightforward. On November 26, 2001, jury trial was scheduled to commence. Prior to jury selection, the Court met in chambers with counsel to discuss some preliminary trial-related matters. In the context of that meeting, counsel for both parties discussed the possibility of reaching a settlement prior to trial. Counsel discussed a settlement proposal of $75,000 (a figure suggested by the Court), conditioned on Rivera's resignation from the State Insurance Fund. Counsel for SIF obtained authorization from his client to make that offer, and Rivera's counsel agreed to present it to Rivera. The Court reset the trial date for the next day, November 27, 2001.

During the evening of November 26, Rivera's counsel telephoned SIF's counsel and informed him that Rivera had rejected the settlement offer, because she did not wish to resign from her job. On Novem-

ber 27, counsel appeared again before the Court. They again asked the Court for a brief period of time to attempt to settle the case. A second offer that increased the settlement amount to $80,000 did not prove successful, as it did not adequately address Rivera's stated concern: that the settlement would require her to resign.

Realizing that the resignation issue was very important to Rivera, counsel for SIF proposed an as-yet unauthorized settlement offer whereby Rivera would receive a sum of money in advance (the precise amount was not fixed in stone, but it was later set at $35,000). SIF would thereafter perform an evaluation of Rivera's ability to perform the essential functions of the positions for which she was qualified, based upon her medical condition *as described by her own physician,* and would determine whether any such position was available. If Rivera could perform all of the essential functions of any of the available positions, SIF would transfer Rivera to that position. Alternatively, if SIF's evaluation revealed that Rivera could not perform all of the essential functions of any of the positions, or if no such positions were available, Rivera would receive an additional sum of money (later set at $25,000), and would then be fired from her job.

Counsel for both parties agreed that, since this proposal had not yet been approved by SIF, counsel for Rivera would first inquire of Rivera whether she would be interested in exploring this settlement possibility before presenting it to SIF for approval. Rivera's counsel agreed to do so, and left chambers to meet with Rivera.

Rivera's counsel returned to chambers and informed SIF's counsel and the Court that Rivera was interested in the proposal. SIF's counsel then telephoned his client, and after extensive discussions, he informed Rivera's counsel and the Court that SIF had formally authorized him to extend the offer to Rivera.

Rivera's counsel left·again to discuss the matter with his client. When he returned to chambers, he informed the Court and SIF's counsel that Rivera had accepted the offer. The Court then dismissed the jury pool, and ordered the parties to file the necessary papers by November 30, 2001 to close the case and enter final judgment.

On November 29, 2001, SIF's counsel sent a proposed Release and Settlement Agreement to Rivera's counsel. The next day, Rivera's counsel requested two minor changes in the agreement; SIF's counsel agreed to make them. Rivera's counsel also told SIF's counsel, however, that he had not been able to have Rivera come to his office to sign the agreement. The Court held a conference call with counsel later that day, and gave the parties until December 3, 2001, to file the necessary settlement papers.

On December 3, 2001, Rivera's counsel advised the Court and SIF's counsel that Rivera had refused to sign the settlement agreement. The Court subsequently ordered the parties to appear for a status conference on December 5, 2001.

At the December 5, 2001 status conference, the Court heard from counsel and from Rivera. Rivera said that she had refused to sign the settlement agreement because she wanted to meet privately with the SIF's Administrator before agreeing on any settlement. This was the first time that the Court had heard anything about a private meeting with the SIF's Administrator, and counsel for both parties concurred that the subject had never surfaced during the lengthy settlement discussions. In any event, Rivera claimed that there had been a "misunderstanding." The Court tried to explain the terms of the settlement agreement as it understood

them to be, but Rivera nevertheless claimed that there had been a misunderstanding. It became apparent that there was a disputed issue of material fact: whether Rivera had authorized her counsel to settle the case.

SIF's counsel expressed his intention to file a motion to enforce the settlement agreement, and he did so on December 7, 2001. (Docket No. 52.) The Court then scheduled an evidentiary hearing on SIF's motion for December 20, 2001. On the date of the hearing, however, the Court expressed its view that Rivera's counsel (José Quetglas) would likely be called to testify at the hearing, and therefore should not serve in a dual capacity throughout the proceedings. Accordingly, the Court allowed Mr. Quetglas to withdraw as Rivera's counsel, and rescheduled the evidentiary hearing for January 29, 2002. (Docket No. 54.)

On January 29, 2002, attorney Dennis Simonpietri, successor counsel for Rivera, asked for a further enlargement of time, given his recent appointment and his need to have more time to become familiar with Rivera's case. The Court granted one final extension until February 12, 2002.

On February 12, 2002, the Court held an evidentiary hearing on SIF's motion to enforce the settlement agreement. It heard testimony from Rivera and from Quetglas. The Court then took the matter under submission.

## DISCUSSION

■ The single issue left for the Court to resolve is whether Rivera's counsel was authorized to enter into a settlement. "An attorney may make a binding compromise on behalf of his client if the client has authorized him to do so." *Michaud v. Michaud,* 932 F.2d 77, 80 (1st Cir.1991)(*citing Garabedian v. Allstates Eng'g Co.,* 811 F.2d 802, 803 (3d. Cir.

1987)). First Circuit precedent has long held that "there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client...." *Id.* Therefore, Rivera bears the burden of proving by affirmative evidence that her lawyer lacked the requisite authority to enter into a settlement agreement. If she rebuts that presumption, the settlement will be rendered ineffective. *Id.*

As a general rule, "a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement." *Malave v. Carney Hosp.,* 170 F.3d 217, 220 (1st Cir.1999). Where, as here, there are questions regarding whether the client authorized the attorney to settle, the Court should hold an evidentiary hearing. *See Kinan v. Cohen,* 268 F.3d 27, 32–33 (1st Cir.2001). "This rule rests on the salutary proposition that the decision to settle litigation belongs to the client, not the lawyer." *Malave,* 170 F.3d at 221.

■ After holding an evidentiary hearing, and affording Rivera ample opportunity to rebut the presumption that she authorized her counsel to settle, the Court is not persuaded that Rivera has satisfied her burden. Indeed, the weight of the evidence strongly points in the opposite direction. The record shows that counsel for both parties made substantial efforts over the course of two days to reach a settlement. When it became clear that Rivera was uncomfortable with the idea of resigning her post, counsel labored arduously to fashion a settlement that, while (arguably) not as attractive for Rivera financially speaking, would provide her with an opportunity to retain her job. At no time during the negotiation process, however, did Rivera's counsel express an interest on Rivera's part in having an op-

portunity to meet privately with the SIF Administrator. Nor did she otherwise indicate that such a requirement would have to be included as part of any settlement agreement.

Although Rivera claims there was a misunderstanding as to the terms of the settlement agreement, the evidence before the Court shows that, during the settlement negotiations, the terms of the then-proposed settlement were explained to her on two separate occasions: when SIF's counsel asked Rivera's counsel to inquire of Rivera whether she would be interested in exploring the alternative settlement offer, and again after SIF's counsel obtained permission to extend the offer formally to Rivera. At no time before announcing that there was a settlement did Rivera's counsel indicate that Rivera would not settle until she received a personal meeting with the SIF Administrator.

The evidentiary hearing did not lend further support to Rivera's version of the facts. To be sure, Rivera claimed that she did not authorize her counsel to approve the settlement, but the details of her testimony failed to support her contention. In particular, she did not explain why she never mentioned her idea of speaking to the SIF Administrator at any point during the two-day settlement negotiation process. Her counsel testified that after giving him instructions to accept the SIF's settlement offer, she told him two days later that she could not sign the settlement agreement. When he inquired why, she said it was a "privileged and confidential" matter, and asked him to give her an extra month to attempt to resolve matters. It later became clear that the "privileged and confidential" matter was her desire to speak with the SIF Administrator personally. It is equally clear that this SIF-Administrator-meeting issue surfaced *after* November 27, 2001, not before. The chronology of events offered by Rivera's counsel—particularly as to this point—went unchallenged by Rivera.

The Court finds Rivera's claim that she did not authorize a settlement as of November 27, 2001 lacks credibility. She certainly appears to have decided against the idea at a later juncture, but she has failed to showed that her change of mind occurred before she orally authorized her attorney to accept SIF's settlement offer.

Lastly, at the evidentiary hearing, Rivera alluded to a heretofore-undisclosed witness (a friend who accompanied her to court) who was present during the negotiations and was allegedly privy to the conversations between her and her attorney. The Court would have been very interested in hearing from this witness, since his testimony would have provided a third-party account of the events that took place on November 27, 2001. On direct examination, however, Rivera's counsel testified that he did not have any conversation regarding the actual settlement proposal in front of Rivera's friend, for obvious reasons—fear of losing the privileged nature of the conversations. Indeed, after revealing the existence of this potentially beneficial (and corroborative) witness during her case-in-chief, Rivera never called him to the stand. At the very least, her decision not to do so would call for an adverse inference that his testimony in fact would not have benefitted her side. The Court is persuaded that Rivera would not prevail in any event.

"[A] Settlement Agreement is still binding, even if it is clear that a party had a change of heart between the time she agreed to the terms of the settlement and when those terms were reduced to writing." *McCune v. First Judicial Dist. Of Penn. Probation Dept.*, 99 F.Supp.2d 565, 566 (E.D.Pa.2000). All of the evidence points to one conclusion: counsel agreed

on a settlement proposal, the parties thereafter accepted its terms, and each party gave counsel authority to settle the case. It is not clear what happened afterwards—or why—but it is clear that Rivera's post-settlement change of heart cannot alter the fact that the parties reached a binding settlement agreement. Accordingly, the Court will grant SIF's motion, and will enforce the settlement.

## CONCLUSION

In sum, "[t]his is another case where a plaintiff has sued [her] employer, counsel appear to have resolved the matter, and plaintiff denies there is a settlement." *Kinan*, 268 F.3d at 28–29 (*citing Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11 (1st Cir.2001)). Rivera has not met her burden of proving that her attorney lacked authority to enter into a settlement agreement. Accordingly, the Court *grants* SIF's motion to enforce the settlement agreement. Judgment will enter accordingly.

IT IS SO ORDERED.