**Sean HOLLOWAY**

v.

**THOMPSON ISLAND OUTWARD BOUND EDUCATION CENTER INC.**

**Civil Action No. 06–CV–10276–RGS.**

United States District Court, D. Massachusetts.

June 29, 2007.

---

Nina J. Kimball, Kimball Brousseau LLP, Boston, MA, for Thompson Island Outward Bound Education Center Inc.

Mitchell J. Notis, Annenberg & Levine, LLC, Brookline, MA, for Sean Holloway.

*MEMORANDUM AND ORDER ON DE-FENDANT THOMPSON ISLAND OUTWARD BOUND EDUCATION CENTER INC.'S MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

This is an employment case involving allegations of race discrimination. Defen-

dant Thompson Island Outward Bound Education Center Inc. (Thompson OBEC) moves for a summary disposition of plaintiff Sean Holloway's Complaint pursuant to Fed.R.Civ.P. 56(c). Thompson OBEC argues that some of Holloway's claims are barred by a previous Settlement Agreement and Release, while the others are unsupported by the evidence. Thompson OBEC's motion will be *ALLOWED*.

### BACKGROUND

In the light most flattering to Holloway as the non-moving party, the material facts are these. Thompson OBEC is a non-profit organization affiliated with the national Outward Bound organization. It operates an Outward Bound program on Thompson Island in Boston Harbor. Sean Holloway, an African American, began working at Thompson OBEC in August of 2003 as a dishwasher and kitchen steward. George Armstrong, then the President of Thompson OBEC, approved Holloway's hiring.

In June of 2004, Holloway complained that he was a victim of employment-related race discrimination and harassment. He also claimed to have been threatened by James O'Connell, a white co-worker.[1] Thompson OBEC and Holloway (who was represented by counsel) agreed to mediation, which took place (successfully) in July of 2004. A Settlement Agreement and Release was executed on July 13, 2004. Holloway agreed to release all of his existing claims against Thompson OBEC in exchange for a monetary settlement, the payment of his attorney's fees, and an assignment to a new job at Thompson OBEC.[2]

As agreed, Holloway was transferred to a maintenance position in the Thompson OBEC Maintenance Department on July 19, 2004. Holloway's supervisors included Timothy O'Loughlin, the Thompson OBEC Vice President of Operations. On the first day of the new job, O'Loughlin gave Holloway a copy of his job description. Holloway was required to report to work by 9:00 a.m. In addition to his regular duties, Holloway was to perform "[a]ny other task as directed by the Director of Plants and Grounds or Vice President of Operations."[3] Holloway thereafter consistently arrived late for work and took more than his allotted number of personal and sick days. His tardiness and unexcused absences violated Thompson OBEC's attendance policy.[4] On August 10, 2004, when O'Loughlin tried to serve Holloway with a written warning regarding his tardiness, Holloway refused to sign or accept it. On August 13, 2004, O'Loughlin made a second effort to speak to Holloway about his tardiness, telling him that he was required to be ready to begin work promptly at 9:00 a.m. Holloway told O'Loughlin that he would not comply. The following day, August 14, 2004, Holloway arrived late for work again, and continued to do so repeatedly over the next month. Holloway also failed to report to work on September

---

1. In November of 2004, Thompson OBEC terminated O'Connell for misconduct towards two other minority employees.

2. Although the Agreement was confidential, it provided that "the parties may make disclosure [of the terms] to comply with law, court order, or subpoena, or to enforce this Agreement."

3. Holloway also agreed as part of the settlement that he would abide by the "rules of conduct" set out in Thompson OBEC's Personnel Manual.

4. The Thompson OBEC Personnel Manual states that "[g]ood attendance and promptness is important, as we depend upon each other. When an employee is absent, another employee must assume the responsibilities of the absent individual."

1, 2, 7, and 8, despite having exhausted his allowance of personal days.

On several occasions, Holloway refused to perform the tasks to which he was assigned. On August 31, 2004, Holloway resisted O'Loughlin's order that he unload a pick-up truck. On September 3, 2004, Holloway and two coworkers, Phillip Martinelli and Kenneth Ostiguy, were hauling trash by boat to the mainland. After arriving at the mainland dock, Martinelli and Ostiguy asked Holloway to assist the unloading of a trash barrel. Holloway refused saying, "You know what, I'm done going to George [Armstrong]. I'm gonna take care of you motherfuckers personally." After Martinelli removed the barrel, Holloway said to him, "You need to just do your job and shut the fuck up." Martinelli told Holloway to calm down, to which Holloway replied that he would "beat [Martinelli's] ass." Later in the day, Holloway pointed his finger at Ostiguy and Martinelli in a manner that they considered threatening.[5] They complained about Holloway's behavior to O'Loughlin who in turn informed Armstrong. O'Loughlin recommended that Holloway be terminated. On September 8, 2004, O'Loughlin, acting at Armstrong's direction, formally terminated Holloway for threatening behavior, insubordination and tardiness.[6] O'Loughlin personally delivered the written termination notice to Holloway on September 9, 2004. Holloway was replaced by another African American male.

Holloway filed a charge of discrimination against Thompson OBEC with the Massachusetts Commission Against Discrimination (MCAD) on April 12, 2005, claiming

that he had been terminated because of his race and in retaliation for his earlier complaint of discriminatory treatment. On September 6, 2005, the MCAD issued a finding of lack of probable cause. Holloway appealed, and on October 13, 2005, the MCAD affirmed the dismissal.

Holloway commenced this action in the federal district court on February 15, 2006. The Complaint consists of four counts of employment discrimination under state and federal law: Count I (discrimination on the basis of race in violation of G.L. c. 151 B); Count II (discrimination on the basis of race in violation of 42 U.S.C. § 2000e); Count III (retaliation in violation of G.L. c. 151 B); and Count IV (retaliation in violation of 42 U.S.C. § 2000e).

## DISCUSSION

Summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue is only 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor." *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 32 (1st Cir.1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... If the evidence is merely colorable, or is not sig-

---

**5.** Thompson OBEC's rules of conduct provide: "Staff members, as representatives of TIOBEC, are part of the educational process. All staff, Island residents and their guests must behave at all times in a manner which supports TIOBEC's mission and public image. Discretion must be used when in public on

the island, on the boat, or at the landings. Clients cannot be expected to distinguish between on-duty and off-duty behavior."

**6.** Armstrong, it will be recalled, is the official who approved Holloway's initial hiring.

nificantly probable, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Holloway's claims are vulnerable on three separate grounds. First, Holloway is barred from raising discrimination claims based on events that occurred prior to July 13, 2004, because of the Release that he executed as part of the Settlement Agreement. The Release is enforceable. The authenticity of the Settlement Agreement is not in dispute. *See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir.2001). Holloway was represented by an attorney, the Release specifically the relinquishes Holloway's employment discrimination claims, and Holloway received tangible consideration in exchange. *See generally Malave v. Carney Hospital*, 170 F.3d 217, 220 (1st Cir.1999). Second, Holloway has proffered no evidence to support even a weak inference of discrimination.[7] To establish a prima facie case of race discrimination under both his state and federal race discrimination claims, Holloway must show "that (1) he belonged to a protected class, a racial minority; (2) he was performing his job at a level that rules out the possibility that he was fired for job performance; (3) he suffered an adverse job action by his employer; and (4) his employer sought a replacement for him with roughly equivalent qualifications."[8] *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003). Holloway cannot meet the requirement of the second element of his prima facie case, that he was adequately meeting the requirements of his job.[9] By being persistently tardy, failing to show up for work, and defying the instructions of his supervisors—all of which is essentially undisputed—Holloway was not performing his job at an even minimally acceptable level. *See id.* at 173 n. 2. ("Benoit's tardiness and absenteeism could be taken to undermine any finding that he was performing adequately.").

■ Even assuming the establishment of a prima facie case of race discrimination, Thompson OBEC has articulated a legitimate, non-discriminatory business reason for Holloway's termination. *See Douglas*, 474 F.3d at 14; *Matthews*, 426 Mass. at 128, 686 N.E.2d 1303. Thompson OBEC fired Holloway for threatening his coworkers, for insubordinate conduct, and for repeated violations of Thompson OBEC's attendance policy. When Holloway's supervisor (O'Loughlin) tried to counsel and warn Holloway that his behavior was placing his job in jeopardy, Holloway refused to sign the warning and told O'Loughlin that he had no intention of mending his ways. Subsequent events confirmed Holloway's intentions. He was absent four days during the week prior to his termination. On August 31, 2004, he refused to perform the task to which he was assigned. On September 2, 2004, he made threatening remarks and gestures to his coworkers. Insubordination, aggressive behavior, and tardiness are all le-

---

7. In analyzing Holloway's disparate treatment claim, the court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Douglas v. J.C. Penney Co.*, 474 F.3d 10, 13–14 (1st Cir.2007); *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128, 686 N.E.2d 1303 (1997).

8. A prima facie case under G.L. c. 151 B is identical in its elements. *See Boston Public Health Comm'n v. Massachusetts Comm'n Against Discrimination*, 67 Mass.App.Ct. 404, 407–408, 854 N.E.2d 111 (2006).

9. The first, third and fourth elements are not in dispute.

gitimate grounds for termination of an employee. *See Benoit,* 331 F.3d at 173 (summary judgment affirmed on race discrimination claim brought by an employee fired for persistent tardiness); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991) (affirming summary judgment on race and retaliation claims brought by an employee fired for insubordination).

Finally, Holloway has failed to produce any evidence that racial animus was a "motivating factor" in Thompson OBEC's decision to terminate him.[10] *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100–101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). First, Holloway offers no competent evidence suggesting that the reasons stated in Thompson OBEC's September 8, 2004 letter for his termination were not the reasons that motivated the decision. All of the acts of misconduct—threatening behavior, insubordination, tardiness and absenteeism—were documented by O'Loughlin and Holloway's coworkers, and all were in contravention of Thompson OBEC's clearly stated rules of conduct. Holloway had not only been made aware of the rules, but had explicitly agreed to observe them as part of the Settlement Agreement. Holloway offers no evidence that Thompson OBEC's decision was motivated by his race. He simply disputes the degree to which his behavior should be deemed inappropriate.[11]

▉ Holloway also makes claims of retaliation under state and federal law (Counts III and IV). To recover on a claim of retaliation, Holloway must prove (1) that he engaged in protected activity; (2) that he suffered an adverse action in that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"; and (3) that a causal connection existed between the adverse action and the protected conduct. *See Burlington Northern & Santa Fe Ry. Co. v. White,* —— U.S. ——, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).[12] That Holloway engaged in protected activity by bringing a complaint of race discrimination to Thompson OBEC is beyond dispute. However, to survive summary judgment, Holloway must "proffer sufficient evidence that 'the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext' for a desire to retaliate." *Billings v. Town of Grafton,* 441 F.Supp.2d 227, 243 (2006), quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See also Lewis v. Gillette Co.,* 22 F.3d 22, 24 (1st Cir.1994); *Lipchitz,* 434 Mass. at 504, 751 N.E.2d 360.

▉ Holloway has failed to point to any competent evidence suggesting a causal link between his complaint of discrimination and his termination other than the loose temporal proximity of the two events (which were separated by some three to four months). *See Lewis,* 22 F.3d at 24 (to survive summary judgment, the employee must show something more than a few weak inferences, particularly where the

---

**10.** Similarly, G.L. c. 151B, requires Holloway to prove that race was the "determinative factor" in the termination decision. *Lipchitz v. Raytheon Co.,* 434 Mass. 493, 504, 751 N.E.2d 360 (2001).

**11.** While Holloway claims that Thompson OBEC treated him more harshly than it treated O'Connell, who is white, there is no dispute that O'Connell suffered the same penalty of termination.

**12.** A prima facie case under G.L. c. 151 B has the identical elements. *See Mole v. University of Massachusetts,* 442 Mass. 582, 591–592, 814 N.E.2d 329 (2004) (to make out his prima facie case of retaliation under Title VII and the Massachusetts antidiscrimination statute, state university professor had to show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action).

events are widely separated in time). If temporal proximity is the only evidence establishing retaliation, the proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam), citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.2001) (3–month period insufficient). *See also MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662 n. 11, 672 N.E.2d 1 (1996) ("The mere fact that one event followed another is not sufficient to make out a causal link.").

There are sound reasons for the requirement that an employee claiming retaliation produce evidence of a causal link between his complaint of discrimination and an adverse employment action. If filing a complaint about discriminatory behavior were to give an employee complete protection from workplace discipline, then any employee who had engaged in misconduct "could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint." *Mesnick*, 950 F.2d at 828–829 (statutes that protect an employee from retaliation do not "clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers.") Thompson OBEC terminated Holloway for insubordination, threatening behavior, and absenteeism and tardiness. Holloway has offered no evidence impugning the truth of Thompson OBEC's reasons for his discharge.

### ORDER

For the foregoing reasons, Thompson OBEC's motion for summary judgment is *ALLOWED*. The case will be closed.

SO ORDERED.