**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 07-2207

SEAN HOLLOWAY,

Plaintiff, Appellant,

v.

THOMPSON ISLAND OUTWARD BOUND EDUCATION CENTER, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

Sean Holloway on brief pro se.
Nina Joan Kimball, Justine H. Brousseau and Kimball Brousseau
LLP on brief for appellee.

April 30, 2008

**Per Curiam**.  Sean Holloway was fired from his position as a maintenance worker for Thompson Island Outward Bound Education Center, Inc. ("TIOB"), which is a non-profit organization operating on one of the Boston Harbor Islands.  He brought suit in the federal district court for Massachusetts, alleging racial discrimination and retaliation in violation of Title VII and the analogous state law.  42 U.S.C. § 2000e (2000); Mass. Gen. Laws ch. 151B.  The court granted summary judgment to TIOB on both claims, Holloway v. Thompson Island Outward Bound Educ. Ctr., Inc., 492 F. Supp. 2d 20 (D. Mass. 2007); Holloway, litigating pro se, appeals.

The story begins in June 2004.  Holloway, who is black, was then working on the kitchen staff.  He complained to TIOB about racial discrimination and harassment on the part of the kitchen supervisor and a fellow employee (both white); the latter allegedly threatened to kill Holloway.  In response, TIOB placed Holloway on paid leave and thereafter negotiated a settlement with his counsel.  The settlement agreement provided, inter alia, that Holloway would be transferred to the maintenance department, that future employment disputes would be subject to arbitration, that Holloway would not be terminated except for just cause and that TIOB would pay Holloway's attorney's fees.

Holloway returned to work on July 19, 2004.  Less than two months later, he was terminated for insubordination, lateness, absenteeism and threatening behavior.

The premise of Holloway's suit is that he was actually fired because of his race or as retaliation for his earlier complaints. Everything turns on motivation: there is no dispute that Holloway is black, had engaged in protected conduct and was subsequently terminated. But if the cause of the firing was insubordination or lateness or absenteeism--anything besides race or his previous complaint--then Holloway's claims fail. Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173-75 (1st Cir. 2003).

TIOB says that Holloway was consistently late for work; that he was on various occasions absent without excuse; that he refused to perform certain assigned tasks; that he was rude to his supervisors when they attempted to confront him over these recurring issues; and that two other employees complained that Holloway had behaved in a threatening manner toward them. TIOB has submitted affidavits from Holloway's supervisors and the record includes as well a running file on Holloway kept by one of them.

Holloway admits that he often began work after 9:00 a.m., but says that the only ferry to the island sometimes arrived late and that the 9:00 a.m. rule was (at least in practice) applied strictly only to the TIOB employees who lived on the island. He also admits that he refused some orders, but explains that his settlement with TIOB provided (implicitly) that he would not have to work with the kitchen staff who had threatened him; his refusals, he says, were only attempts to enforce that right.

-3-

Likewise, he concedes that he refused to discuss with his supervisors some of the complaints they raised, e.g. about his lateness--referring them instead to his lawyers--but his settlement did provide for arbitration of disputes and Holloway may have been concerned about unintentionally waiving his rights during informal discussions. He does acknowledge at least some of the absences TIOB attributes to him, but denies threatening anyone.

On this record, the prima facie case for discrimination is extremely weak. Those who terminated Holloway had nothing to do with the kitchen staff who had harassed him. There is certainly no direct evidence of discrimination, and the circumstantial case is weakened--if not defeated altogether--by the fact that Holloway was replaced by another black employee. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).

The evidence suggesting a possible retaliatory motive for the firing is somewhat stronger, primarily because of the close temporal proximity between Holloway's protected conduct and his firing. Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007). The termination took place within two months of his return to work following his complaints of racial harassment-- an interval surely short enough at least to raise suspicions. Id.; see also Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004).

-4-

But these suspicions can be authoritatively dispelled (and *a fortiori* the weaker discrimination claims defeated) by an employer's convincing account of the legitimate reasons for the firing. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973). And TIOB has provided, with solid support in the record, a list of such reasons. Holloway could only overcome this barrier by poking sufficient holes in TIOB's account to create a plausible inference that the reasons given for the discharge actually mask a forbidden retaliatory motive.

He has not done so. Although he advanced the reasonable argument that if the first ferry to the island arrives after 9:00 a.m., an employee should not (indeed, would not) be penalized for lateness, the record reveals that Holloway faced discipline for *missing* the ferry entirely or for not checking in with his department *after* its arrival--different matters entirely.[1]

And he has defended his refusal to follow orders by claiming that his settlement agreement entitled him to stay away from the kitchen staff, but the written agreement in the record contains no such provision and even if an oral side-agreement existed, the record reflects that Holloway's supervisors attempted

_____

[1]For example, the running file kept by Holloway's supervisor indicates that on August 10, "Sean missed boat. Crew saw him drive onto EDIC dock @ 8:36 after they had already turned to seaward." On August 13, the file indicates that Holloway was instructed to be "ready to work . . . directly from the 9:00 boat drop off." And on August 31, he was reprimanded because when "the ferry arrived at 9:15, [he] walked by our workshop and did not check in."

to accommodate him but were met with noncompliance and insubordination on a series of occasions. For example, the running file indicates that on August 31, Holloway "returned to Mr. Tibbetts to voice [his] aversion to working with Mr. Eppinger. At this time Mr. Tibbetts advised 'Fine, then just help Brendan and Kenny get the rest of the stuff on the pier when they are done.'" However it was later revealed that Holloway "had not assisted with any moving of materials and had gone off to work on [his] own."

Holloway cannot explain away the insubordination by claiming that his settlement provides for arbitration of disputes; TIOB might still legitimately take issue with his rudeness, use of obscenities and refusal to discuss routine matters with his supervisors. Merely as one instance among several, the running file says that on August 13, Holloway's supervisor attempted:

> to address [Holloway's] habit of being ready for work at 9:30. He stated that it was the way he did things and what he was accustomed to and that he would not change this practice. Made statements such as "I don't need this crap" and "I'm not even talking to you, send it to my lawyer." . . . Told him to please not ignore me or I will be forced to give him negative written feedback for insubordination. Said he did not care, "whatever." . . . [Later that day,] Sean made veiled threats that "You do not want to get involved in this or you'll go down too." Said that "many lawyers out there would love to get a piece of this and I'm just tempted to call them."

Moreover, Holloway has not even attempted to respond to various other complaints about his work performance, such as his

repeated practice of calling in sick after 9:00 a.m., in violation of TIOB policy. (The running file indicates that Holloway called in sick after 9:00 a.m. on August 20 and August 24.) Nor can all of his unexcused absences be justified by a family emergency that apparently took place during late July and early August. (The record supports TIOB's claims that Holloway was absent without excuse on September 1, 2, and 7, among other days.)

In sum, TIOB has provided an extensive list of problems with Holloway's performance, backed up by record support. Holloway has no evidence that this documentary support (including the running file kept by his supervisor) was falsified in any way, and his attempts to refute the reasons one-by-one are not persuasive. On this record, no reasonable jury could find that the explanations for his discharge were pretexts and therefore that his termination reflected discrimination or retaliation on the part of TIOB.

<u>Affirmed</u>.