Marie M. MALAVE, Plaintiff, Appellant,

v.

CARNEY HOSPITAL, et al.,
Defendants, Appellees.

No. 98–1718.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1999.

Decided March 9, 1999.

---

Robert LeRoux Hernandez for appellant.

Michael F.X. Dolan, Jr., with whom Robert H. Morsilli and Murphy, Hesse, Toomey & Lehane were on brief, for appellees.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

SELYA, Circuit Judge.

This appeal stems from a discrimination suit filed by plaintiff-appellant Marie M. Malave against her quondam employer, Carney Hospital (the Hospital).[1] In the underlying case, Malave alleged disparate treatment on the basis of disability, race, and national origin. In the midst of discovery, the opposing lawyers agreed to a $15,000 settlement. Nevertheless, when the Hospital's counsel forwarded a proposed settlement agreement, the appellant refused to execute it, claiming that she had never authorized her attorney to settle the case for less than $30,000.

The Hospital asked the district court to enforce the purported settlement. The court granted the motion without holding an evidentiary hearing. This appeal followed.[2]

---

1. Malave's complaint also named a supervisor, Carol Krzywda, as a codefendant. For ease in reference, we refer to the employer as if it alone had been sued. Our ruling, of course, binds both Krzywda and the Hospital.

2. Ten days before the appellant docketed her notice of appeal, she filed a motion for relief from judgment in the district court, see Fed. R.Civ.P. 60(b), incorporating within it affidavits from her and her new counsel, respectively. The district court denied the motion. Because we hold that the court erred in summarily enforcing the purported settlement, see text infra, we have no occasion to discuss the denial of the Rule 60(b) motion. Accordingly, we have not considered either that motion or the materials annexed to it for purposes of this opinion.

A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. If, at the time of the claimed breach, the court case already has been dismissed, the aggrieved party may bring an independent action for breach of contract. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). If, however, the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement. *See United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.") (citations omitted); *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 852–53 (1st Cir.1987) (similar). In a federal court, such a motion—at least when the underlying cause of action is federal in nature—is determined in accordance with federal law. *See Michaud v. Michaud*, 932 F.2d 77, 80 n. 3 (1st Cir.1991); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir.1989); *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); *Gamewell Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 115–16 (4th Cir.1983).

As a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement. In such circumstances, the cases consentingly hold that the court instead must take evidence to resolve the contested issues of fact. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir.1994); *TCBY Systems, Inc. v. EGB Associates, Inc.*, 2 F.3d 288, 291 (8th Cir.1993) (per curiam); *Hardage*, 982 F.2d at 1496; *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 153 (6th Cir.1992); *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir.1991); *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir.1988); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987);

*Mid–South Towing*, 733 F.2d at 390; *Autera v. Robinson*, 419 F.2d 1197, 1203 (D.C.Cir. 1969). It is against this backdrop that we assess the record here.

When the Hospital filed its motion to enforce, it tendered an unsigned copy of a draft settlement agreement and its counsel's affidavit explaining its version of the attendant circumstances. The lawyer, Michael F.X. Dolan, Jr., recounted "back and forth" conversations with his opposite number, Matthew Cobb, during which Cobb made a settlement demand of $15,000. Dolan stated that he agreed to pay the demanded sum in return for a stipulation of dismissal and a general release. He then transmitted a proposed agreement to Cobb both by facsimile and by mail.[3] Though the agreement seems prolix and covers a multitude of subjects (e.g., a waiver of any right to reemployment; a covenant not to comment on the payment or to speak ill of the releasees), the Hospital takes the position that it was boilerplate.

There is no way that these materials, standing alone, would justify summarily enforcing a settlement agreement. Evidence supplied by one side to the dispute, especially nontestimonial evidence not subject to cross-examination, ordinarily will not suffice to ground enforcement of an ostensible settlement. *See Hardage*, 982 F.2d at 1497; *Callie*, 829 F.2d at 891. But the district court had before it more than this one submission. Four days after the Hospital served its motion, Cobb filed a response.[4] It is evident from even a cursory glance that this pleading did not purport to represent the appellant's views, protect her interests, or advance her position. To the contrary, its contents made manifest that Cobb (who wished to consummate the settlement) and his client (who wished the litigation to proceed) were at swords' point.

Even though the document that Cobb filed declared that he had received authority from Malave to effectuate a $15,000 settlement, it

---

**3.** Curiously, the Hospital did not attach the transmittal letter to the motion papers, and we have been unable to locate it in the record.

**4.** Although Cobb styled this pleading as "Plaintiff's *Verified* Response to Defendant's Motion to Enforce Settlement and General Release" (emphasis in the original), it is signed only by Cobb on behalf of Cobb.

went on to state that Malave's son, on Malave's behalf, had called Cobb within a day or two to make sure that Cobb understood that he did *not* have authority to settle the case for that sum. This recitation ought to have alerted the district court that something had gone awry, and that the extent of Cobb's authority was open to question. We cannot conceive of a more fundamental dispute concerning the existence *vel non* of a settlement agreement than occurs when a litigant and her lawyer wrangle over whether the former imbued the latter with authority to settle.

Moreover, this was not an instance in which the existence of the settlement had somehow been conceded previously by both parties or in which the court had been able to acquire personal knowledge through, for example, a settlement conference or a hearing. *See Murchison,* 13 F.3d at 1487; *Petty,* 849 F.2d at 132–33; *Autera,* 419 F.2d at 1200. Prudence dictates that a trial court, confronted with so tenebrous a record, should withhold summary enforcement and instead probe for better evidence on which to base an informed determination as to whether the parties had in fact reached a binding agreement. This is all the more true where, as here, the motion papers clearly contemplated that an evidentiary hearing would be held, and the response to the motion explicitly requested such a hearing.[5]

■■■ Setting the nature and quality of the requisite evidence to one side, the Hospital argues that the purported settlement must stand because it (the Hospital) relied on Cobb's representations about his authority. In mounting this argument, the Hospital draws upon the doctrine of apparent authority, under which third parties who detrimen-tally rely on an agent's unauthorized representations sometimes may hold the principal to the consequences of such reliance. *See, e.g., Veranda Beach Club Ltd. Partnership v. Western Surety Co.,* 936 F.2d 1364, 1377 (1st Cir.1991). As suggested by our earlier analysis, the doctrine of apparent authority may not be invoked in these purlieus. Under hoary principles of federal common law, a general retainer, standing alone, does not permit an unauthorized attorney to settle claims on his client's behalf. *See United States v. Beebe,* 180 U.S. 343, 352, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Michaud,* 932 F.2d at 80; *see also Holker v. Parker,* 11 U.S. (7 Cranch) 436, 452, 3 L.Ed. 396 (1813).

■■■ This rule rests on the salutary proposition that the decision to settle litigation belongs to the client, not the lawyer. *See Michaud,* 932 F.2d at 80; *Fennell,* 865 F.2d at 501–02. The rule logically implies that a settlement agreement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client, and the cases so hold. *See Morgan v. South Bend Community Sch. Corp.,* 797 F.2d 471, 478 (7th Cir.1986); *Luis C. Forteza & Hijos, Inc. v. Mills,* 534 F.2d 415, 418 (1st Cir.1976); *see also Garabedian v. Allstates Eng'g Co.,* 811 F.2d 802, 803 (3d Cir.1987) (per curiam) (tacitly adopting actual authority requirement). Since actual authority is the barometer and the evidence before the district court did not compel a conclusion that Cobb possessed actual authority to conclude a settlement, the Hospital's motion for summary enforcement could not be granted.[6] *See Millner v. Norfolk & W. Ry. Co.,* 643 F.2d 1005, 1009–10 (4th Cir.1981) (holding that the existence of a dispute over an attor-

---

5. Indeed, Attorney Cobb's submission closed by stating that "[i]n the interest of fairness to all Parties, the Court should, after Notice to all Parties, conduct an evidentiary hearing to determine whether the settlement in this action is binding." In connection with his request for an evidentiary hearing, Attorney Cobb went so far as to offer to "submit to the Court in camera currently privileged documents and testimony indicating that the settlement was reached with Malave's full consent and authority."

6. We note in passing that the outcome would be the same were we to base our analysis on consid-

erations of apparent authority. While in some settings an agent's apparent authority may be sufficient to bind the principal, that result invariably requires justifiable reliance by the aggrieved party. *See, e.g., Veranda Beach Club,* 936 F.2d at 1377. The venerable principle that retainer alone does not suffice to vest a lawyer with settlement authority itself placed the Hospital on notice that Cobb's statements did not suffice, without more, to bind Malave to a settlement agreement. Consequently, the Hospital's reliance on Cobb's representations was unjustified. *See Fennell,* 865 F.2d at 502.

ney's authority to settle renders summary enforcement inappropriate).

There is also the Hospital's contention, emphasized at oral argument, that we should overlook all else because there has been an accord and satisfaction. In its most familiar iteration, accord and satisfaction envisions that the parties will settle a dispute on terms requiring payment by one party of a sum greater than that which he admits he owed and receipt by the other party of a sum less than that which she claims is due, thereby extinguishing the underlying claim. *See, e.g., Cadle Co. v. Hayes,* 116 F.3d 957, 962 (1st Cir.1997). The Hospital attempts to invoke the doctrine on the basis—nowhere reflected in the district court record—that Malave (or Cobb, on her behalf) accepted and cashed a check for $15,000 that constituted the consideration for the purported settlement. This initiative fails for two reasons.

First, in this context, an accord and satisfaction requires a voluntary, mutually assented to exchange of money for a release. *See id.* There is absolutely no evidence of voluntariness or mutuality here, and what little we know points the other way. As the Hospital itself admits in its brief, it sent a check to Cobb, for Malave, pursuant to the instructions set forth in the district court's enforcement order.[7] That order was the functional equivalent of a mandatory injunction. These circumstances hardly bespeak either voluntariness or mutuality.

The second basis for rejecting the Hospital's accord and satisfaction argument relates to the bedrock rule of appellate practice that, except in the most extraordinary circumstances (not present here), matters not raised in the trial court cannot be hawked for the first time on appeal. *See National Ass'n of Soc. Workers v. Harwood,* 69 F.3d 622, 627 (1st Cir.1995); *Teamsters Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992); *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 22 (1st Cir.1991). The Hospital's attempt to raise an accord and satisfaction defense offends this rule.

The fact that the purported accord and satisfaction took place after the district court entered the enforcement order does not relieve a litigant who wishes to rely on it of the obligation to bring that matter first to the trial court's attention. Accord and satisfaction is a fact-based defense—and one important reason for the rule requiring litigants to broach matters initially with the trial court is that adherence to it allows the parties to develop the relevant facts. In turn, this gives a court which possesses a factfinding capability an opportunity to resolve new issues in an informed manner—a praxis that provides invaluable assistance when the appellate court thereafter performs its reviewing function. Here, there are no facts in the record concerning the ostensible accord and satisfaction—merely assertions. We cannot intelligently decide cases on so problematic a basis.

We need go no further.[8] Summary enforcement of arm's-length settlements is a useful device to hold litigants to their word, but the procedure ought to be reserved for situations in which a struck bargain is admitted or proved, and the basis for nonperformance is insubstantial. Thus, when a district court purposes summarily to enforce a settlement, it first must ascertain whether or not a binding agreement in fact existed. The evidence before the district court in this case raised too many unanswered questions as to the existence *vel non* of such an agreement. Therefore, the court ought not to have granted the Hospital's motion to enforce the purported settlement

---

7. The lower court's order stipulated that the "[d]efendants shall deliver to Attorney Matthew Cobb as attorney for Marie M. Malave a check in the amount of fifteen thousand and no/100 Dollars ($15,000.00) ("Settlement Amount") made payable to 'Matthew Cobb, Esquire/Attorney for Maude M. Malave.'" It then adds: "Attorney Cobb, as soon as practicable after receipt of the Settlement Amount, shall deposit it into his IOLTA account and disburse the Settlement Amount according to his fee agreement with Plaintiff."

8. We need not reach (and, therefore, express no opinion on) the appellant's argument that, in all events, the terms of the settlement agreement prepared by Attorney Dolan far exceeded the scope of the authority that Attorney Cobb claimed to have extracted from his client.

without taking evidence and resolving the disputed issues of material fact.

*The order enforcing the putative settlement is vacated and the case is remanded to the district court for further proceedings.*