DECISION
This matter is before the Court on Benedetto and Silvia Rossi's and Leonard and Lois Macaione's (collectively, the "plaintiffs") Motion to Enforce Settlement Agreement against GAF Corporation ("GAF").[1] For the purpose of this Motion, these cases have been consolidated.
 Facts/Travel
The Center for Claims Resolution ("CCR") is an agency established by various companies to provide for the administration, defense, settlement, payment and disposition of asbestos-related claims that have been filed against its member companies. Each member company executed a Producer Agreement with the CCR authorizing CCR to act as its agent for the purpose of settling asbestos-related claims. In addition, the Producer Agreement provides for the allocation of liability among its members. The Producer Agreement requires that each member be responsible for paying its portion of liability under the settled claims. In September 1988, GAF entered into a Producer Agreement with CCR.
The plaintiffs entered into a settlement agreement with the CCR for payment of personal injuries sustained due to occupational exposure to asbestos-containing products manufactured by the defendants.[2]
Pursuant to the settlement agreement, payment was due ninety (90) days after execution of the agreement. Subsequently, the CCR sent plaintiffs a check in an amount less than that agreed to under the settlement agreement. In a letter accompanying the check, CCR informed the plaintiffs that the check evidenced the amounts due from each of the defendants minus the amount due from GAF. The letter stated that GAF had refused to pay its portion of liability. The total amount of the settlement agreement for the above-entitled plaintiffs was $13,750.00. The check submitted by CCR to said plaintiffs was in the amount of $10,143.65. The unpaid portion of the settlement, for which CCR claims GAF is responsible, is $3,606.35.
The plaintiffs have filed a Motion to Enforce Settlement Agreement. The plaintiffs are asking this Court to enter an order compelling GAF Corporation to pay its unpaid portion of the settlement agreement. The plaintiffs are also asking for prejudgment interest at a rate of 12 percent (12%) per year calculated from the date upon which payment was due.
 Standard of Review
This Court does not recognize or provide for a Motion to Enforce Settlement Agreement. However, a party to a settlement agreement may seek to enforce the agreement's terms when the other party breaches. Malave v. Carney Hospital, et al., 170 F.3d 217, 220 (1st Cir. 1999). As a general rule, "a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement." See id.; see also Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992). If there is a dispute as to material facts pertaining to the existence or terms of a settlement agreement, then an evidentiary hearing is necessary. Graley v. Yellow Freight System, Inc., No. 98-4166, 221 F.2d 1334, (6th Cir. June 14, 2000). "In order to enforce the agreement, the court must find that the parties have agreed on all material terms of the settlement." See id. This Court is not permitted to alter the terms of the agreement, but must enforce the settlement as agreed to by the parties. See id.
 Agency
Under the general principles of agency law, a disclosed or partially disclosed principal is liable to a third party for the authorized actions of its agent. Kenney Mfg. Co. v. Starkweather Shepley, Inc.,643 A.2d 203, 209 (R.I. 1994) (citing Cardente v. Maggiacomo Insurance Agency, Inc., 272 A.2d 155, 156 (R.I. 1971)). An agent is authorized to act when he or she has authority and when an agency relationship exists. 3 Am. Jur. 2d Agency § 18 (1986). Existence of an oral or written agreement between parties establishes an actual, expressed agency. See id. "When the facts relied on to determine the existence of an agency are undisputed and conflicting inferences cannot be drawn, then the existence of an agency is a question of law to be determined by the Court." 3 Am. Jur. 2d Agency § 327 (1986).
The plaintiffs contend that CCR had actual, expressed authority under the Producer Agreement to settle asbestos-related claims on behalf of GAF and to apportion GAF's percentage of liability. However, GAF argues that no such authority existed. In fact, GAF claims that CCR is solely liable to make payments under the settlement agreement. GAF notes that the language of the settlement agreement requires only CCR and not the Participating Producers to enter into settlements and make payments (emphasis added). GAF also claims that CCR does not have the authority to allocate to GAF a portion of the settlement owed to the plaintiffs.
This Court finds that an expressed agency existed between CCR and GAF. Pursuant to the Producer Agreement, CCR had actual, expressed authority to act as GAF's agent in settling asbestos-related personal injury claims. The Producer Agreement provides that
 "By becoming a signatory to the Agreement and member of the Center [CCR], each Participating Producer hereby designates the Center as its sole agent to administer and arrange on its behalf for evaluation, settlement, payment or defense of all asbestos-related claims against such Participating Producer. As sole agent, the Center [CCR] shall have exclusive authority and discretion to administer, evaluate, settle, pay or defend all asbestos-related claims . . . ."
 "The Center [CCR] shall serve as the sole agent of each Participating Producer with respect to all asbestos-related claims . . . ."
This Court also finds that GAF cloaked CCR with apparent authority in settling asbestos-related claims. "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the others, arising from and in accordance with the other's manifestations to such third persons." Parillo v. Chalk, 681 A.2d 916, 919 (R.I. 1996) (quoting Restatement (Second) Agency § 8 (1958)); 3 Am. Jur. 2d Agency § 78 (1986) (apparent authority is defined as "authority not actually granted, which the principal knowingly permits the agent to exercise, or which he holds him out as possessing"). To establish apparent authority the principal must manifest to the third party that he or she consents to have an act done on his or her behalf. See id.; Restatement (Second) Agency § 8 cmt. b (1958) ("the manifestation of the principal may be made directly to the third person, or may be made to the community . . . . , by authorizing the agent to state that he is authorized or by continuously employing the agent.").
CCR was established for the purpose of defending and settling asbestos-related claims. Each member, which included GAF, entered into a written Producer Agreement with CCR manifesting to third parties their expressed consent to actions taken by CCR on their behalf. Over the past 12 years, CCR has acted as agent for GAF in settling asbestos-related claims. In fact, it is well known in the asbestos litigation community that CCR has settled numerous claims on behalf of its members. Furthermore, the plaintiffs have understood CCR to have authority to act on GAF's behalf and have dealt with CCR with the understanding that it was GAF's agent. Therefore, this Court finds that GAF held CCR out as its agent in settling and defending asbestos-related claims and that the plaintiffs believed CCR had authority.
Finally, this Court finds that CCR possessed the authority to commit GAF individually to a specified portion of the settlement amount. The Producer Agreement specifically provides that each Participating Producer "is responsible for a percentage share of liability payments and a percentage share of allocated expenses attributable to each claim handled by the Center [CCR] as sole agent for the Participating Producers." Moreover, the Producer Agreement states that, "liability payments and allocated expenses shall be apportioned to each Participating Producer. . . ." The language of the Producer Agreement is clear and unambiguous. This Court finds no evidence that GAF was not aware of or did not understand this provision when it entered into the Producer Agreement with CCR. Therefore, GAF should not be allowed to avoid its payment obligations by claiming CCR had no authority.
 Prejudgment Interest
Section 9-1-50(a) of the Rhode Island General Laws provides that
 "Whenever any claim is settled, the insurance company, adjusting company, or any other person, firm, or corporation responsible for paying the settlement shall make payments within thirty (30) days from the date the claimant or his or her attorney sends the release. Failure to make payment within the thirty (30) days shall raise a presumption that failure to do so was a willful and wanton disregard for the rights of the claimant. In addition to all other remedies, the payor shall be liable to the claimant in a separate cause of action for punitive damages and interest which shall be computed at the rate of twelve percent (12%) per annum from the date the cause of action giving rise to the settlement occurred until the judgment on the claim brought pursuant to this section is entered."
Under this section, a defendant's failure to make payments within the given time period raises a statutory presumption that there was a willful and wanton disregard for the plaintiff's rights. Hutter v. Hartford Accident Indemnity Co., 710 A.2d 665, 666 (R.I. 1998). The plaintiff must produce evidence that the defendant acted willfully, maliciously or recklessly in failing to make the settlement payment. See id.
The plaintiffs argue that GAF refused to pay its portion of the settlement when the amount came due. Therefore, the plaintiffs contend that they are entitled to prejudgment interest at a rate of twelve percent (12%) per annum accruing from the date the monies were due. GAF disagrees and argues that the proposition that the plaintiffs are entitled to punitive damages and interest is inapplicable. GAF contends that the plaintiffs "contracted out" of this statute. The settlement agreement entered into between the plaintiffs and CCR provides that settlement funds will not be forwarded by CCR until ninety (90) days after the plaintiff's executed releases have been forwarded. GAF also claims that it has never received releases from the plaintiffs and therefore cannot be held to have violated the statute.
The evidence demonstrates that the plaintiffs entered into a settlement agreement with CCR for claims arising out of injuries they sustained as a result of occupational exposure to the defendant's asbestos containing products. Pursuant to the settlement agreement, the parties agreed that funds would not be forwarded until ninety (90) days after the execution of releases. This Court finds that the language of the settlement agreement does not preempt the statute so as to contract the parties out of adhering to the statute. GAF had an obligation to make payment on the settled claims in a timely fashion. The settlement agreement only served to extend that time to ninety (90) days. The settlement agreement did not release GAF from any liability under the statute for refusal to pay.
At this time, GAF has refused to make payment of its portion of the settled claims. In fact, there is evidence that all across the country CCR is refusing to honor its obligation to pay its portion under various settlement agreements. The plaintiffs have provided sufficient evidence to show that a release was given and that GAF willfully refused to pay the money. As such, this Court finds that the plaintiffs are entitled to prejudgment interest at the rate of 12 percent (12%) per year calculated at the time the money was due.
 Conclusion
Based on the foregoing, this Court grants the plaintiffs' Motion to Enforce Settlement Agreement. This Court finds that CCR had actual, expressed authority to settle all asbestos-related claims on behalf of GAF. This Court also finds that GAF, a disclosed principal, by and through its agent, CCR, entered into a written settlement agreement with plaintiffs and has refused to pay plaintiffs pursuant to that agreement. Consequently, GAF must pay plaintiffs $3,606.35, plus prejudgment interest at 12 percent (12%) per year commencing from the date upon which the settlement amount was due until said judgment is paid in full.
Counsel shall prepare an entry for judgment in accordance with this decision.
[1] Counsel for the plaintiffs informed this Court that in lieu of filing additional briefs, the plaintiffs in the above-entitled action will adopt the position set forth in the brief submitted by those plaintiffs represented by Early, Ludwick Sweeney. The plaintiffs in this matter admit that the factual scenario and legal issues facing them are identical to those presented in the Early, Ludwick Sweeney brief.
[2] Mr. Rossi filed his personal injury claim on March 19, 1996. Mr. Macaione filed his personal injury claim in March 14, 1996.