# United States Court of Appeals
## For the First Circuit

No. 11-1917

PAMELA A. JONES,

Plaintiff, Appellant,

v.

WALGREEN CO.; WALGREEN CO. INCOME PROTECTION PLAN FOR STORE
MANAGERS; METROPOLITAN LIFE INSURANCE COMPANY; MICHAEL CAMPBELL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Boudin, Circuit Judge.

Joshua Karsh, with whom Hughes Socol Piers Resnick & Dym,
John M. Brown, and Law Office of John M. Brown, were on brief for
appellant.
Gregory A. Manousos, with whom Robert P. Morris and Morgan,
Brown & Joy, LLP, were on brief for appellee.

May 10, 2012

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Pamela Jones ("Jones") appeals the district court's award of summary judgment to her employer, Walgreen Co. ("Walgreens"), on her claims of (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Massachusetts General Laws ch. 151B and (2) unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII"), and Massachusetts General Laws ch. 151B. See Jones v. Walgreen Co., 765 F. Supp. 2d 100 (D. Mass. 2011). We conclude that summary judgment was properly granted as to Jones's disability discrimination claims. We further hold that no triable issues of material fact remain with regards to Jones's claim of unlawful retaliation and affirm the judgment of the district court on this issue as well.

## I. Background and Procedural History

We set forth the facts in the light most favorable to Jones. Rivera-Colón v. Mills, 635 F.3d 9, 10 (1st Cir. 2011).

Jones worked as a Walgreens employee for approximately twenty years, starting in 1986. During most of her tenure, Jones served as a Store Manager at a Walgreens location in Enfield, Connecticut and reported to District Manager Jerry Telson ("Telson").

In January 2004, Jones slipped on ice in front of a Walgreens office, injuring her knee. Thereafter, Jones was on

-2-

medical leave until May 2004 recovering from her injuries.  Jones
again stepped away from work in June 2004, this time to have
surgery on her knee.  In March 2005, while still on leave, Jones
wrote Telson to inform him that she hoped to return to work with
"reasonable accommodations."  This letter was soon followed by
another, dated April 14, 2005, whereby Jones provided a report from
her orthopedist, Dr. Martin Luber ("Dr. Luber"), which explained
that Jones was limited to lifting weights lower than twenty-five
pounds and could only exert herself to minimal bending, stooping,
and squatting.

While out on leave in July 2005, Jones filed claims with
the Connecticut Commission on Human Rights and Opportunities and
the U.S. Equal Employment Opportunity Commission ("EEOC") in which
she accused Walgreens of discrimination against women.  After Jones
received the requisite right-to-sue papers from these agencies,
Jones incorporated her claims into a nationwide Title VII class
action complaint on behalf of over 21,000 plaintiffs, which she
subsequently filed in July 2006 in the U.S. District Court for the
District of Connecticut.[1]

---

[1]  "As of August 27, 2010, the suit had settled for $17,000,000 to
be distributed among 21,000 class members, including [Jones], with
each class member receiving between $100 and $6000."  Jones, 765 F.
Supp. 2d at 104 n.1.  The class action suit and its settlement are
only important to this appeal insofar as the suit formed the basis
for Jones's claim of retaliation against her in the wake of her
termination.  We discuss this claim infra.

In October 2005, Walgreens offered Jones a position as Store Manager in Springfield, Massachusetts. Jones accepted the offer to relocate to Springfield and resume her employment, but warned Telson in an email that she could not climb ladders, lift objects that weighed more than twenty pounds, or work shifts greater than eight hours in a day. Jones also voiced her concerns that the Walgreens location in Springfield was understaffed and expressed her belief that she deserved a raise. In addition, Jones let Telson know that her approach as Store Manager would be to delegate, to the extent to which it was possible, the physical obligations of store operations to other staff members.

Jones then resumed her employment with Walgreens at the Springfield location. In September 2006, however, Jones communicated with Telson to inform him that she was having difficulty walking and shelving items at the store. Jones also expressed that she thought she was working longer hours than were medically advisable. Telson then asked Jones to provide updated medical information, which she did later that month. In this updated medical information, Dr. Luber tendered his medical opinion that Jones had several permanent physical restrictions. On October 13, 2006, shortly after receiving this updated information, Telson provided Jones with a notice of termination, which explained that her employment with Walgreens was being terminated effective

immediately, as it was "clear" that Jones could "no longer perform the essential functions of [her] position as Store Manager."

Jones filed suit against Walgreens in the U.S. District Court for the District of Massachusetts on January 15, 2009. In relevant part,[2] her complaint alleged disability discrimination in violation of the ADA. In addition, Jones alleged that, in terminating her employment, Walgreens had unlawfully retaliated against her in violation of Title VII. Her complaint also asserted claims under the relevant Massachusetts statutory analogues to the ADA and Title VII. See Mass. Gen. Laws ch. 151B.

On December 20, 2010, Walgreens moved for summary judgment as to Jones's discrimination and retaliation claims. Jones filed her opposition on January 21, 2011. On February 24, 2011, the district court granted Walgreens's motion for summary judgment, concluding that no reasonable jury could find in Jones's favor with regards to either her disability or retaliation claims. This timely appeal followed.

## II. Discussion

### A. Standard of Review

We begin our discussion by framing our analysis within the relevant standard of review.

---

[2] Jones's complaint asserted six other claims not at issue in this appeal, all of which alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA).

Summary judgment may suitably issue where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, 'drawing all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation.'" Balser v. IUE Local 201 & Gen. Elec. Co., 661 F.3d 109, 118 (1st Cir. 2011) (quoting Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quotations omitted)). In doing so, "[w]e are not wed to the lower court's rationale, but rather, may affirm . . . summary judgment on any ground made manifest by the record." Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005).

## B. Disability Discrimination

Jones's primary grounds for appeal implicate her claim that Walgreens discriminated against her based on disability, in violation of 42 U.S.C. § 12101 et seq. and Massachusetts General Laws ch. 151B, § 4(16). We note that "Chapter 151B is considered the 'Massachusetts analogue' to the [ADA]." Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2009) (quoting Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 32 & n.1 (1st Cir. 2001)). Accordingly, we need not conduct parallel analyses under both federal and state law since our application of either would unfold in the same manner. See Russell

v. <u>Cooley Dickinson Hosp., Inc.</u>, 437 Mass. 443, 772 N.E.2d 1054, 1062 n.6 (2002) (noting the Supreme Judicial Court of Massachusetts "look[s] to the Federal cases decided under the ADA as a guide to the interpretation of [Chapter] 151B").

A plaintiff seeking to establish a prima facie case of disability discrimination under the ADA must show, by a preponderance of the evidence,

> (1) that she was "disabled" within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability.

<u>Ruiz Rivera</u> v. <u>Pfizer Pharm., LLC</u>, 521 F.3d 76, 82 (1st Cir. 2008). If a plaintiff so establishes these factors, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action." <u>Ramos-Echevarría</u> v. <u>Pichis, Inc.</u>, 659 F.3d 182, 186-87 (1st Cir. 2011).

In granting summary judgment in favor of Walgreens, the district court assumed that Jones could meet the threshold issue of disability, but concluded that no reasonable jury could find that Jones was "able to perform the essential functions of her job even with reasonable accommodations." <u>Jones</u>, 765 F. Supp. 2d at 106. We agree with the district court and affirm its judgment on this issue for the reasons we now explain.

**1. The "Essential Functions" of a Walgreens Store Manager**

An essential function is "one that is 'fundamental' to a position rather than 'marginal.'" Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 75 (1st Cir. 2010) (quoting Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001)). The regulatory framework provides helpful guidance as to what constitutes such a function. Thus, in conducting the relevant inquiry a court may look to "'[t]he employer's judgment as to which functions are essential'; '[w]ritten job descriptions prepared before advertising or interviewing applicants for the job'; '[t]he work experience of past incumbents in the job'; and '[t]he current work experience of incumbents in similar jobs.'" Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006) (alterations in original) (quoting 29 C.F.R. § 1630.2(n)(3)).

Because the applicable statutory and regulatory framework accords a significant degree of deference to an employer's own business judgment regarding which functions are essential to a given position, our inquiry may begin by turning to the written descriptions attached to a particular job. See 29 C.F.R. § 1630.2 (n)(3)(i) (dictating "employer's judgment" serves as evidence as to "which functions are essential"); see also Richardson, 594 F.3d at 76 ("[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions

of the job." (quoting 42 U.S.C. § 12111(8)) (internal quotation marks omitted)). We take the written descriptions of the Store Manager position that Walgreens has provided as our starting point, mindful, however, that an "employer's good-faith view of what a job entails, though important, is not dispositive." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25 (1st Cir. 2002).

Walgreens's official written description of the Store Manager position itemizes twenty-nine distinct primary responsibilities, many of which describe the job's duties in aspirational or general terms. Thus, for example, a Walgreens Store Manager is responsible for "[a]ssuring [Equal Employment Opportunity] compliance through equity, consistency, and fairness; prevent[ing] workplace harassment; . . . [and] communicat[ing] openly and honestly to employees at all times." According to Walgreens's description, a Store Manager is similarly responsible for "[i]mplement[ing] store organization through proper hiring and placement, scheduling of work, assignment of responsibility, and delegation of authority."

These somewhat abstractly-defined primary job responsibilities could make our task more difficult; we have noted in the past that in identifying the functions that are essential to a specific job, "[p]recision is critical, as the level of generality at which the essential functions are defined can be outcome determinative." Richardson, 594 F.3d at 75. Nevertheless,

undisputed evidence in the record persuades us that the listed responsibilities of the Store Manager position cannot be properly read as an exhaustive list of all the tasks required of an employee in that role and establishes that the Store Manager job is, in indispensable part, an on-your-feet post requiring routine physical activity.[3]

We need not discuss each of the duties listed in the Store Manager written job description or the physical tasks that may be involved in fulfilling these. Instead, we train our focus on two primary job responsibilities found in the official Store Manager job description, the details of which have been fleshed out during the litigation below and in the parties' filings to this Court. Specifically, the employer's job description at issue in this case explains that a Store Manager is expected to, among other things,

> (1) Improve[] and maintain[] store condition, maintenance, and appearance for the safety, health, and well-being of customers and employees . . . .

---

[3] Most notably, Walgreens's official job description includes the disclaimer: "This job description is to be used as a guide for accomplishing Company and department objectives, and only covers the primary functions and responsibilities of the position. It is in no way to be construed as an all encompassing list of duties." (Emphasis added).

> (2) Implement[] Corporate [planograms][4] and merchandising guidelines, to include properly using endstands, promotional space, and display tables. . . .

These two primary responsibilities outline the contours of the routine physical tasks that Walgreens requires of a Store Manager and, we conclude, may properly be deemed essential to the position. As we now explain, the summary judgment record leaves no doubt that several physical tasks are part and parcel of these essential functions. While a Store Manager does not spend her days working the chain gang, neither does she merely count beans or paper-push. Cf. Richardson, 594 F.3d at 78 ("It is not uncommon for 'managers' of small restaurants and retail stores to spend little of their time managing others.").

The evidence of record demonstrates that in fulfilling her duties, a Walgreens Store Manager spends an appreciable amount of time performing several tasks of a physical nature. See 29 C.F.R. § 1630.2(n)(3)(iii) (providing amount of time spent on job performing function serves as evidence of whether that function is essential). In her deposition Jones herself explained that before she injured her knee in 2004, her responsibilities included tasks such as "inspecting the sales floor, assisting customers with

---

[4] "A planogram is essentially a diagram showing where specific products are to be positioned in the space allotted by a retail store for a particular category of products." Church & Dwight Co., Inc. v. Mayer Labs., Inc., 2012 WL 1231801, at *1 n.1 (N.D. Cal. Apr. 12, 2012) (quotation marks omitted).

-11-

requests, placing signs on the sales floor, cleaning shelves, restocking shelves, unloading delivery trucks, [] using a ladder to reach high shelves . . . . [and] walk[ing] the floor 'numerous' times on a daily basis." Jones, 765 F. Supp. 2d at 106. Telson, Jones's supervisor, also explained that Store Managers were routinely required to, among other tasks, sweep floors, clean bathrooms, pull stock, stock shelves, unload trucks, make end stands become side racks (for store displays), and build tables as these tasks became necessary for a store to operate properly. Telson explained in detail during his deposition that a Store Manager must, commensurate with her responsibilities, conduct daily walkthroughs "three feet by three feet" at a time. See id. at 107. Telson affirmed that these walkthroughs were a time-consuming endeavor which regularly took more than an hour on account of interruptions from customers, vendors, and employees. Id. Importantly, Telson's averments to this effect were corroborated by two incumbent Store Managers at Walgreens locations, see 29 C.F.R. § 1630.2(n)(2)(vii) (providing "current work experience of incumbents in similar jobs" is proper evidence of whether a particular function is essential), "one of whom testified that he spends six-and-a-half hours on the sales floor every day and one of whom testified that she spends two or three hours doing her walkthrough each day." Jones, 765 F. Supp. 2d at 107 (internal citations omitted).

Jones stands her ground. She argues that in granting summary judgment in Walgreens's favor, the district court ignored substantial evidence raising triable issues of fact on which functions were essential to her erstwhile post as Store Manager. She urges us not to do the same.

Jones begins by claiming that her most recent Walgreens performance review made no mention of her work having been affected by physical limitations or inability to perform any of the above-referenced tasks. She reasons that a jury could have feasibly relied on her past performance of the job to determine that the physical tasks that Walgreens claims are essential to the Store Manager position were unimportant or marginal.

Jones's arguments on this point are unavailing. The performance review that Jones brings to our attention, endorsed by both Telson and Jones on April 28, 2006, accounts for Jones's performance as a Store Manager at a Walgreens location in Springfield, Massachusetts during a period of "12 months through March 2006." However, as we discuss further infra, the record shows that whatever Walgreens's understanding of Jones's limitations or restrictions was during this period, it certainly changed when Walgreens received supplementary information from Dr. Luber in September 2006. At that point, Walgreens was informed that Dr. Luber believed that Jones should permanently refrain from engaging in several of the physical tasks listed above. It was

only thereafter that Walgreens acted to terminate Jones's employment. Thus, a performance review that was completed approximately five months before Walgreens received this updated medical information is immaterial to answering the question of whether Jones could perform the essential functions of her job as of the date she was terminated.

Second, Jones contends that evidence in the record shows that certain tasks Walgreens claims are crucial to the Store Manager role could be either delegated to other store personnel or altogether disregarded. Here, Jones relies on the testimony of Rosemary Patchell ("Patchell"), an incumbent Store Manager deposed on Jones's behalf. In her deposition, Patchell affirmed that in the five years she had functioned as a Store Manager at her current store location, she had never unloaded a delivery truck because she had opted to routinely delegate that task to her staff. Jones also relies on statements Telson made during his deposition to the effect that several tasks -- e.g., sweeping the store, setting up stands, side racks, and tables, stocking shelves, and cleaning bathrooms -- could be delegated to a subordinate, if such a person were available and had been properly trained. Based on this testimony, Jones posits that since a number of tasks were delegable, they could not also be considered essential.

Jones's reasoning on this issue is unconvincing. The fact that certain tasks associated with a particular position can

-14-

be either reduced, reassigned, or reallocated to a subordinate does not, by itself, render them non-essential to the position they were associated to in the first place. See Richardson, 594 F.3d at 78 (noting evidence that restaurant manager's "physical duties were reduced or shifted to other employees after she was injured" held "minimal value" as to whether those duties were essential). Our cases recognize that "[a]n employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation." Laurin v. Providence Hosp., 150 F.3d 52, 60-61 (1st Cir. 1998). Consequently, the fact that at any given time certain tasks ascribed to the role of Store Manager may be delegated or reassigned to other store personnel may inform our inquiry into the job's essential functions but by no means ends it.

We conclude that the summary judgment record before us leaves no room for a reasonable jury to fail to find that it was essential for Jones, as Store Manager of a Walgreens location, to (1) improve and maintain store condition, maintenance, and appearance for the safety, health, and well-being of customers and employees and (2) to implement corporate planograms and merchandising guidelines, to include properly using endstands, promotional space, and display tables. In addition, the record establishes that varied tasks of a discernibly physical nature were

necessary in carrying out these functions and crucial to the proper performance of the Store Manager position.

### 2. Jones's Ability to Perform the Essential Functions of the Store Manager Position

Our second task is to determine whether Jones was capable of performing the essential functions of the Store Manager position with or without reasonable accommodation.  Simply stated, we assess whether  the summary judgment record would allow a reasonable jury to find that Jones could perform enough of the tasks required to properly (1) improve and maintain store condition, maintenance, and appearance for the safety, health, and well-being of customers and employees and (2) to implement corporate planograms and merchandising guidelines, to include properly using endstands, promotional space, and display tables. See Richardson, 594 F.3d at 79 ("[I]f an employer has a legitimate reason for specifying multiple duties for a particular job classification . . ., a disabled employee will not be qualified for the position unless [s]he can perform enough of these duties to enable a judgment that [s]he can perform its essential duties." (quoting Miller v. Ill. Dep't of Corr., 107 F.3d 483, 485 (7th Cir. 1997) (emphasis altered)).  Jones bears the burden of showing she could perform the essential functions of the Store Manager role with or without accommodation.  See Calef v. Gillette Co., 322 F.3d 75, 86 (1st Cir. 2003).

As she did at the district court, Jones makes much of the fact that she had been working as Store Manager for close to a year following her initial knee surgery before receiving her notice of termination. See Jones, 765 F. Supp. 2d at 107-08. Jones thus reasons that her apparent past ability to perform the job without issue supports an inference that she could effectively undertake the essential functions of the Store Manager role.

Jones's argument misses the mark. It is well settled that "'[a]n ADA plaintiff may not rely on past performance to establish that [s]he is a qualified individual without accommodation when there is undisputed evidence of diminished or deteriorated abilities.'" Richardson, 594 F.3d at 80 (quoting Land v. Wash. Cnty., Minn., 243 F.3d 1093, 1096 (8th Cir. 2001)); see also Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir. 1999) (upholding denial of judgment as a matter of law against ADA plaintiff where "record reflect[ed] virtually nothing to indicate that, at the time [she] was fired, she could perform the essential functions of her job without accommodation"). Even if we assume that Jones was fully capable of performing the essential functions of her job prior to September 2006, the record amply supports the district court's determination that competent evidence foreclosed the same conclusion after that date. Indeed, Walgreens is on firm ground when it argues that whatever its understanding of Jones's physical restrictions was, that understanding was altered

-17-

in September 2006 when it first gleaned the full scope of Jones's physical limitations.

Specifically, a note from Dr. Luber dated September 11, 2006, explained his belief that Jones should permanently refrain from bending, stooping, or reaching below her knees, squatting, kneeling, climbing stairs, or using ladders.  Dr. Luber also noted that Jones would have to minimize standing or walking and could only work up to eight hours a day.  A more formal follow-up note dated September 14, 2006 then explained that Dr. Luber thought Jones "should not have to stand or walk for greater than 30 minutes at a duration without being allowed to take a break, change positions or sit down when necessary."  If given a short break, Dr. Luber added, Jones could "again stand for an additional 30 minutes," but could spend "no more than 4-5 total hours each day . . . in a standing position, [] with frequent breaks as necessary."  Dr. Luber clarified that these limitations were also of a permanent nature and stated his impression that Jones had "reached end maximum medical improvement."[5]

"An employer may base a decision that [an] employee cannot perform an essential function on an employee's actual limitations, even when those limitations result from a disability."

---

[5]  In his second note, Dr. Luber expressly apologized for any confusion he could have caused by using "a generic note that can be utilized to make [] restrictions temporary until [medical] follow-up" to convey his impressions in the first note.

<u>Calef</u>, 322 F.3d at 86. Walgreens certainly could, as it states it did, rely on Jones's physician's medical opinion when it assessed the scope of Jones's limitations. Reviewing Dr. Luber's instructions, we must necessarily conclude that, as of September 2006, due to her physical restrictions Jones could not, among other things, competently conduct store walkthroughs -- a crucial task expected of the Store Manager that, according to Telson's testimony, could neither be completed in under 30 minutes nor be done in shorter temporal segments -- without accommodation; "bend, stoop, and reach to the ground or to low shelves to get products for customers or to pick up items that have fallen," <u>Jones</u>, 765 F. Supp. 2d at 107, as Telson testified a Store Manager routinely would have to do; or use ladders to reach high shelves, as Jones herself testified she regularly did before her accident, <u>see</u> <u>id.</u> at 106. Nor could Jones inventory merchandise, arrange store displays, or unload delivery trucks -- all tasks assigned to the Store Manager position, each of which, according to evidence in the record, requires bending at the knees, kneeling, or standing for extended periods of time.

This was all simply too much. A reading of the record suggests that, as of September 2006, Jones could not undertake a broad enough range of the tasks necessary to adequately perform the functions essential to the Store Manager position. Even if Jones could perform <u>some</u> of the tasks associated with the essential

-19-

functions of the job, her physical limitations prevented her from executing a great too many others.  Cf. Miller, 107 F.3d at 485 ("If it is reasonable for a farmer to require each of his farmhands to be able to drive a tractor, clean out the stables, bale the hay, and watch the sheep, a farmhand incapable of performing any of these tasks except the lightest one (watching the sheep) is not able to perform the essential duties of the position.").  We must therefore conclude that no reasonable jury could find that Jones could effectively perform the essential functions that we have already identified above.

**3.  Walgreens's Alleged Failure to Engage in an "Interactive Process" Regarding Possible Accommodations**

Jones complements her "essential functions" arguments with allegations that the district court mistakenly concluded that Walgreens did not violate the ADA by failing to engage her in discussions regarding possible accommodations.  This claim is grounded in 29 C.F.R. § 1630.2(o)(3), which prescribes:  "To determine [] appropriate reasonable accommodation[s] it may be necessary for [an employer] to initiate an informal, interactive process . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  Jones reasons that she had already requested reasonable accommodations before she was terminated -- i.e., by clarifying that she would delegate most physical obligations of store operations -- and had, by that time, performed

her job for approximately a year.  Jones argues that Walgreens unilaterally dissolved those accommodations when it terminated her in contravention of the "interactive accommodation process" envisioned by the ADA.

We find that this ancillary claim similarly fails and hold that the district court correctly concluded that Walgreens was not under a legally-imposed obligation to go further than it did or engage in a more demanding interactive process to accommodate Jones.  Our cases are clear that "an employer's duty to accommodate does not arise unless (at a bare minimum) the employee is able to perform the essential functions of [her] job with an accommodation."  DeCaro v. Hasbro, Inc., 580 F.3d 55, 63 (1st Cir. 2009).  Faced with the panoply of tasks that Jones was barred from performing as of the date of her orthopedist's last correspondence with Walgreens, we do not believe a trier of fact could reasonably find that Jones could perform the essential functions of the Store Manager post, with or without accommodation.[6]  And it is no answer

---

[6]  Contrary to what Jones suggests, it was her burden to proffer accommodations that were reasonable under the circumstances -- a burden Jones did not meet below.  See Feliciano v. State of R.I., 160 F.3d 780, 786 (1st Cir. 1998) ("The plaintiff . . . bears the burden of showing the existence of a reasonable accommodation."). Indeed, in granting summary judgment, the district court noted that Jones "ha[d] identified no accommodation that would have enabled her, within her restrictions, to perform the [] physically demanding job of Store Manager."  Jones, 765 F. Supp. 2d at 108. Thus, while Jones's brief posits that further engagement could have potentially unveiled certain accommodations, such as the use of a mobility scooter with which to conduct store walkthroughs, Jones did not raise this or other possible arrangements until her

under either federal or Massachusetts law for Jones to say, as she does, that she could work past her physical restrictions by delegating the considerable number of tasks that she could not accomplish. See Richardson, 594 F.3d at 81 ("'[T]he law does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous.'") (alterations in original) (quoting Mulloy, 460 F.3d at 153)); Godfrey v. Globe Newspaper Co., 457 Mass. 113, 928 N.E.2d 327, 336 (2010) ("Neither elimination of an essential duty from a position nor assignment to an unrelated position are 'reasonable accommodations' . . . .").

## C. Allegations of Retaliation

Having determined that Jones may not sustain her claims that Walgreens unlawfully discriminated against her because of a disability, we now address Jones's remaining claim on appeal. At issue is whether the district court erred when it granted summary judgment against Jones in connection with her claim that Walgreens retaliated against her for protected conduct in violation of 42 U.S.C. § 2000e-3 and Mass. Gen. Laws ch. 151B, § 4(4). Jones's retaliation claim does not depend on the success of her disability claim. See Colón-Fontánez v. Municipality of San Juan, 660 F.3d

---

briefing to this Court and has thus waived this issue. See Malavé v. Carney Hosp., 170 F.3d 217, 222 (1st Cir. 1999) (noting "bedrock rule of appellate practice that, except in the most extraordinary circumstances . . ., matters not raised in the trial court cannot be hawked for the first time on appeal").

17, 36 (1st Cir. 2011); Carreras v. Sajo, García & Partners, 596 F.3d 25, 35-36 (1st Cir. 2010). Federal and Massachusetts law are in harmony on this issue. See Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st Cir. 2003) ("Massachusetts anti-discrimination law also treats retaliation as a 'separate and independent cause of action.'" (quoting Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 731 N.E.2d 1075, 1087 (2000))).

Our discussion of Jones's allegations of unlawful retaliation under either federal or Massachusetts law is coterminous with the other. See Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 n.4 (1st Cir. 2007) (noting burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) "applie[s] to claims brought under both the federal and [Massachusetts] state retaliation provisions"). Jones must first establish a prima facie claim of retaliation.[7] If she does make out a prima facie case, "the burden shifts to the employer 'to articulate a legitimate, nondiscriminatory [or nonretaliatory] reason for its employment decision.'" Wright, 352 F.3d at 478 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)). If the employer successfully meets this burden, the burden shifts again and the plaintiff-employee must then show

---

[7] In order to make a prima facie case, Jones must show that: "(1) she [] engaged in protected conduct; (2) suffered an adverse employment action; and (3) [that] there was a causal connection between the protected conduct and the adverse action." Colón-Fontánez, 660 F.3d at 36.

"'that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus.'" Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010) (quoting Román v. Potter, 604 F.3d 34, 39 (1st Cir. 2010)).

Two of Jones's actions -- her filing a gender discrimination claim with the EEOC and its Connecticut counterpart and her subsequent filing of a class action complaint against Walgreens -- are clearly protected conduct. See, e.g., Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 31 (1st Cir. 2011); Gu v. Bos. Police Dept., 312 F.3d 6, 14 (1st Cir. 2002). The fact that Jones's firing from her post constituted an adverse employment action is another issue that need not unduly detain us. See Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011) ("[T]ermination of employment obviously is an adverse employment action . . . ."). Because we agree with the district court that in light of Jones's twenty-year tenure a three-and-one-half month period between the time Jones filed a class action lawsuit against Walgreens and her termination could, to a reasonable juror, seem sufficiently close temporal proximity, we assume for present purposes that Jones can establish a prima facie causal connection.[8]

---

[8] We disagree with Walgreens to the extent it points to Jones's filing of her EEOC and Connecticut administrative complaints, fifteen months before her firing, as the only protected act relevant to the issue of whether she can make a prima facie retaliation claim. Jones also engaged in protected activity when

See <u>Wyatt</u> v. <u>City of Bos.</u>, 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action.").

Walgreens asserts that it terminated Jones from her employment as a Store Manager because it determined, based on the medical information it received from Dr. Luber in September 2006, that Jones was unable to perform the essential functions of her position. Jones accordingly bears the ultimate burden of showing that Walgreens's explanation was, in fact, pretextual. To do so she must "raise a genuine issue of fact as to whether retaliation motivated the adverse employment action." <u>Collazo</u>, 617 F.3d at 50.

We do not believe that Jones has met her burden of showing that a reasonable factfinder could conclude that Walgreens acted because of retaliatory motives instead of the legitimate reasons it asserts. Even reading the record before us in the light most favorable to Jones, we must still conclude that a rational

---

she filed a nationwide class action complaint against Walgreens alleging gender discrimination on behalf of over 21,000 women on July 1, 2006, approximately three-and-one-half months before she was removed from the Store Manager position. We agree with the D.C. Circuit case Jones cites for the sound proposition that "[T]itle VII . . . protect[s] employees who engage in <u>any</u> protected activity," <u>Jones</u> v. <u>Bernanke</u>, 557 F.3d 670, 680 (D.C. Cir. 2009) (emphasis added), not just those who suffer adverse employment action immediately after they first engage in protected conduct. <u>See</u> <u>id.</u> (rejecting employer's argument that "temporal proximity could support an inference of retaliation only in the immediate aftermath of the employee's first protected act").

trier of fact would inescapably find that Walgreens terminated Jones's employment for the reasons it claims it did -- because, as of September 2006, it possessed indisputable evidence in the form of information from Jones's orthopedist that Jones was physically unable to perform her job.

Furthermore, Jones's efforts to suggest pretext do not persuade. First, Jones notes that Walgreens did not make an issue of her ability to perform the physical demands of the Store Manager role until she filed a nationwide class action suit against Walgreens on behalf of over 21,000 plaintiffs. In trying to draw a causal connection between these two events, however, Jones too conveniently overlooks that, according to Telson's undisputed testimony, Walgreens only requested updated medical information from Jones once she complained to Telson that she was having a hard time walking and shelving items in the store she oversaw. It was then that Dr. Luber communicated his medical opinion to Walgreens and only thereafter that Walgreens acted to remove Jones from her position as Store Manager.

Second, Jones underscores that her last Walgreens performance review, dated April 28, 2006, did not specifically explain that Jones had difficulty performing her job because of physical restrictions. Jones reasons that the absence of any reference to deficient performance due to physical limitations in this review supports a causal connection between her protected

activity later that year and Walgreens's subsequent decision to fire her.

Again, Jones either discounts or fails to account for evidence in the record. In particular, and as the district court emphasized, while Jones's last performance review did not make explicit mention of problematic physical restrictions, the form nonetheless memorialized her supervisors' opinion that she "Need[ed] Improvement" in certain categories, such as "Customer Service," "Inventory Management," and "Store Condition." See Jones, 765 F. Supp. 2d at 111. Importantly, Telson -- who, as Jones's supervisor, was named on the performance review form as the authoring reviewer -- testified that these categories were germane to Jones's physical faculties and, specifically, to Jones's "restricted ability to be present on the sales floor." Id.

We go no further. Read as a whole the record does not support Jones's contention that a reasonable jury could find that Walgreens acted out of retaliatory animus when it removed her from her position as Store Manager. We accordingly find that her retaliation claim fails as a matter of law.

### III. Conclusion

For the reasons stated, we affirm the district court's grant of summary judgment.

**Affirmed.**